UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

CRUZ MARIA-MEJIA,                                      Docket #

                              Plaintiff,

       - against -
                                                       **COMPLAINT**
THE CITY OF YONKERS, DON-GLO IV
OF YONKERS SERVICE CENTER INC.,                        Jury Trial Demanded
and DOUGLAS FOLEY

                              Defendants.
-------------------------------------------------------------------X

Plaintiff CRUZ MARIA-MEJIA, by her attorneys, CAMPANELLI & ASSOCIATES, P.C.,

as and for her complaint against the defendants, The City of Yonkers (the "City" or "Yonkers"),

DON-GLO IV OF YONKERS SERVICE CENTER INC ("DON-GLO"), and Douglas Foley

("Foley") respectfully alleges as follows:

## NATURE OF ACTION

1.     Plaintiff brings this action seeking a declaratory judgment, compensatory and

punitive damages, costs, and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 for

deprivation of her rights that are secured by the Fourth and Fourteenth Amendments to the

United States Constitution.

2.     Defendants unlawfully seized and retained plaintiff's 2016 Mercedes for alleged

investigative purposes, without affording a modicum of due process to the plaintiff, as the owner

of her vehicle (hereinafter referred to as "the Vehicle").

3.     In addition, plaintiff brings this action to stop the widespread and repeated

deprivations of property without regard to the well-settled and fundamental constitutional rights

to be free from unreasonable seizures and to due process of law under the United States and

New York Constitutions.

4.      Specifically, Yonkers and the other defendants routinely work in tandem to seize vehicles—including the Vehicle at issue here—as part of Yonkers' ill-advised and overly aggressive revenue-raising scheme relating to parking ticket enforcement. Attached as *Exhibit A* is a printout (printed on July 15, 2025) from the City of Yonkers' website setting forth its "Boot and Tow Information/Policy."

5.      Attached hereto as *Exhibit "B"* is a printout of Chapter 109, Section §109-132, of the Yonkers City Code, which is current as of July 15, 2025.

6.      Yonkers' boot and tow policy has been the subject of several lawsuits, two of which, so far, have resulted in judgments requiring Yonkers to amend its parking enforcement program to comply with the United States Constitution.[1] These successful challenges to Yonkers' parking enforcement program have made Yonkers and the other defendants aware of the dictates of the United States Constitution when it comes to impounding vehicles.

7.      Nevertheless, in defiance of the above judgments, the City of Yonkers and the other defendants continue a widespread unconstitutional practice of making warrantless seizures of motor vehicles, while providing vehicle owners no pre-seizure hearing, and no post-seizure hearing at which the vehicle owner can challenge the defendants' unconstitutional seizure and retention of such vehicles.

8.      Even after the United States District Court for the Southern District of New York ruled that such warrantless seizures violate vehicle owners' rights under the Fourth and Fourteenth Amendments, the City simply continues to make such warrantless seizures in

---

[1] *See Toyota Lease Trust v. The City of Yonkers,* No. 19 Civ. 03199 (GBD), Dkt No. 21 (S.D.N.Y. Entered May 15, 2020); *Santander Consumer USA, Inc. v. The City of Yonkers et. al.* No. 20 Civ. 04553 (KMK)(PED), Dkt. No. 79 (S.D.N.Y. Judgment entered Aug. 17, 2021); *see also, Santander Consumer USA, Inc. v. The City of Yonkers et. al.* No. 21 Civ. 10715 (PMH), Dkt. No. 1 (S.D.N.Y. Filed Dec. 15, 2012).

defiance of the Court's explicit ruling. *See Santander v. The City of Yonkers*, No. 30 Civ. 4553 (KMK) Dkt, No. 144 at page 20 ¶2, (Summary Judgment Granted against City of Yonkers S.D.N.Y. Filed Sept. 12, 2022).

9.    Yonkers and the other defendants routinely leverage the hardship of seizure and the subsequent threat of disposal of motor vehicles to force payment of unadjudicated parking tickets and to force turnover of additional unauthorized fees and other things of value to the defendants (including, but not limited to, releases of liability and towing and storage charges).

10.    Here, the defendants seized and detained the plaintiff's Vehicle from a legal parking space in a shopping mall parking lot, for the sole purpose of an undisclosed investigation. Plaintiff received no notice and no opportunity to be heard regarding the initial seizure or the temporary deprivation of her property.

11.    Plaintiff was denied her due process rights as a result of the defendants' unlawful, arbitrary, and confiscatory actions, seizing the Vehicle for some undisclosed investigation.

12.    Under the facts and circumstances of this case, the defendants committed egregious constitutional violations. It is long-established law that when the Police seize personal property, due process requires that, *at the time of seizure*: (a) the government must have in place a procedure through which those individuals may seek to reclaim or recover the property which is being seized from them by the Police, and (b) the employee of the Police department who is seizing such property, acting in the course of their duties as a law enforcement officer, must give them written notice of what that procedure is. *See, e.g., Alexandre v. Cortez*, 140 F.3d 406 (2d Cir.1998); *Butler v. Castro*, 896 F.2d 698 (2d Cir.1990); *McClendon v. Rosetti*, 460 F.2d 111 (2d Cir.1972). In violation of this requirement, at the time of the seizure, Defendants did not provide Plaintiff with a written notice of the procedure through which she could reclaim her car.

13.    The defendants knew or should have known that it was unlawful and unconstitutional to make warrantless seizures of Plaintiff's personal property and thereafter to deny her possession of her property.

14.    The defendants knew or should have known that it was unlawful and unconstitutional to seize and detain a vehicle without a warrant for investigative purposes. Without a valid judgment and a writ of execution authorizing a sheriff to seize property, none of the defendants are vested with any authority to seize property.

15.    Similarly, the defendants knew or should have known that depriving plaintiff of her personal property without affording her any pre-deprivation or post-deprivation process (*i.e.*, notice and a hearing or review by a neutral decisionmaker) through which she could challenge the initial seizure, temporary deprivation, and/or permanent deprivation of her property, including the release of her property to a third party claiming a superior right of possession, violates every notion of due process under the U.S. Constitution and N.Y. State Constitution.

16.    By unlawfully seizing and detaining the Vehicle, and claiming a superior right of possession without a hearing, the defendants deprived Plaintiff of her right of continued possession and use of the Vehicle, as well as her redemption rights.

17.    No hearings occurred, or were even offered, in relation to any of these actions.

**JURISDICTION AND VENUE**

18.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 relating to Defendants' deprivation of Plaintiff's rights secured by the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff also seeks a declaratory judgment pursuant to 28 U.S.C. § 2201.

4

19.    The remaining causes of action are appropriate pursuant to 28 U.S.C. §1367 for interrelated state law claims that arise from the occurrences giving rise to the Federal claims, which have a common nucleus of operative fact.

20.    Venue lies in the Court pursuant to 28 U.S.C. § 1391(b)(1), because the Defendants reside in this district and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

21.    Plaintiff Cruz Maria-Mejia ("Plaintiff") is an individual residing in the Bronx, New York. At all relevant times described herein, she was the owner of the Vehicle.

22.    Upon information and belief, defendant the City of Yonkers is a municipal corporation organized and existing under the laws of the State of New York, with a principal place of business situate at 40 South Broadway, Yonkers, NY 10701.

23.    Upon information and belief, defendant, Don-Glo IV of Yonkers Service Center, Inc. is a corporation duly organized and existing under the laws of the State of New York and operating as a business engaged in the towing and storage of vehicles, with a principal placed of business situated at 179 Mclean Avenue, Yonkers, NY 10705.

24.    Upon information and belief, defendant Douglas Foley is a resident of the State of New York and is the owner and CEO of Don-Glo IV of Yonkers Service Center, Inc. As such, upon information and belief, Foley is the person responsible for the policies, practices and decisions made by Don-Glo IV of Yonkers Service Center, Inc..

25.    Upon information and belief, defendant Douglas Foley actual place of business and/or employ is situated at 179 Mclean Avenue, Yonkers, NY 10705.

## Defendants' Unconstitutional Practices
## Are Applied Against the Plaintiff

26.    At all times described herein, the plaintiff was the owner of the Vehicle described herein.

27.    As the owner of the Vehicle, Plaintiff possessed the sole, undisputed right of continued possession and use of her Vehicle.

28.    On or about November 27, 2024, the defendants seized the plaintiff's Vehicle consistent with regular policies, practices and procedures of the defendants. The seizure was carried out without a warrant or a valid exception to the warrant requirement.

29.    Upon information and belief, the reason for Yonkers' seizure of the Vehicle was for an undisclosed law enforcement investigation.

30.    On or about November, Don-Glo IV of Yonkers Service Center, Inc. was an active regular contract agent towing and detaining vehicles at the direction of Yonkers law enforcement officials.

31.    Upon seizing the Vehicle, Yonkers directed Don-Glo IV of Yonkers Service Center, Inc to tow and detain the Vehicle.

32.    Yonkers never provided any hearing, either pre-seizure or post-seizure, regarding the propriety of the seizure.

### Yonkers and DON-GLO Imposed an *Ex Parte* Lien on the Vehicle

33.    Yonkers and Don-Glo demanded payment of various sums of money as conditions for the release of the Vehicle. Defendants retained the Vehicle to force plaintiff to pay such sums.

34.    Yonkers' and Don-Glo's demands for money in exchange for possession of the

Vehicle are tantamount to asserting a *de facto* possessory lien in the Vehicle superior to Plaintiff's rights, the assertion and imposition of which constitute a deprivation without due process of law.

35.     There is no law which requires plaintiff to pay Yonkers' towing and storage bill for Don-Glo. To the extent Yonkers and/or Don-Glo seek to rely on any state law (*e.g.* N.Y. Lien Law) to justify their conduct, these laws are unconstitutional as applied in these circumstances, but are not challenged on their face here.

36.     Plaintiff paid approximately $6,314.75 to retrieve the Vehicle from Don-Glo. *See Exhibit "C."* Plaintiff paid these sums under the threat that if the vehicle was not claimed within ten (10) days it would be deemed abandoned and sold at auction pursuant to the policy, practice and procedure of Yonkers and Don-Glo. *See Exhibit "D."*

37.     Yonkers benefited from Don-Glo detention of the Vehicle to secure said payment in that Yonkers was able to compensate Don-Glo for its impound storage services, as well as its towing services to clear the roadway, without paying any *money* to Don-Glo.

38.     Don-Glo possessed the Vehicle solely by virtue of its relationship with Yonkers and acted in concert with Yonkers to seize, detain, and/or dispose of the Vehicle. But for the mantle of authority given to it by the City of Yonkers, Don-Glo had no legal right to remove the Vehicle from the roadway and retain it until its towing and storage fees were paid by plaintiff. Don-Glo was, therefore, acting under the color of law when it towed, stored and/or disposed of the Vehicle.

### Yonkers' and Don-Glos' regular policies, customs, and/or practices which were applied to the Vehicle

39.     The conduct of Yonkers and Don-Glo in relation to the Vehicle on and after November 27, 2024 comported with the regular policies, customs and/or practices of both

Yonkers and Don-Glo for the handling of Vehicles encountered and impounded under the same or similar circumstances.

40.    Yonkers carries out essential functions through its own police who, among other things, seize vehicles for a variety of reasons ranging from alleged criminal infractions to violations of the vehicle and traffic law.

41.    Yonkers delegates the performance of a portion of its essential functions to towing and impound contractors like Don-Glo. Specifically, the Yonkers police utilize Don-Glo to tow away, store and/or dispose of vehicles seized by Yonkers police acting in the course of their duties as law enforcement officers. As such, Don-Glo acts as an arm of the City when it tows, stores and/or disposes of a vehicle.

42.    Pursuant to this relationship, Yonkers exercises governmental authority to seize vehicles through and in concert with Don-Glo.

43.    Regardless of the reason for Yonkers' initial seizure of a given vehicle, Yonkers does not return seized vehicles to a person with a preexisting property interest when the justification for Yonkers' seizure has lapsed. Instead, Yonkers places seized vehicles in the possession of its towing and impound contractors, including Don-Glo, for storage and ultimate disposal, permitting the assertion of an *ex parte* possessory lien to secure payment of the resulting charges relating to towing, storage, and disposal.

44.    Rather than receiving monetary consideration from Yonkers for the services Yonkers has contracted Don-Glo to provide, Don-Glo instead accepts possession of vehicles on which Yonkers permits it to impose *ex parte* possessory liens for towing and storage fees, which it claims supersedes any other person's rights in these vehicles.

45.    After imposing *ex parte* possessory liens on impounded vehicles, Don-Glo refuses

8

to return possession of the vehicles to any other person, even those with preexisting property rights in the vehicles, while accruing additional daily storage charges.

46.    Yonkers benefits from Don-Glo's imposition of *ex parte* liens on, and/or sale of vehicles, because such liens serve as compensation to Don-Glo in place of monetary consideration from Yonkers for Don-Glo's towing and impound services.

47.    Moreover, upon information and belief, Don-Glo pays a portion of the proceeds it obtains from *others* back to Yonkers as part of its agreement(s) with Yonkers.

48.    Don-Glo cannot lawfully possess impounded vehicles without the mantle of Yonkers' authority. Thus, Yonkers' compensation to Don-Glo pursuant to the contract between them is the permission for Don-Glo – in exercising that portion of Yonkers' police power – to retain monies obtained from third parties (*i.e.*, vehicle owners) in exchange for its services to Yonkers.

49.    It is Yonkers' regular policy and custom – and by extension, Don-Glo's regular policy and custom – in the course of the above-described conduct, not to obtain a warrant for any of the following actions (for which no valid exception to the warrant requirement exists):

    A.  The initial seizure of the vehicle;

    B.  The turnover of possession of the vehicle to Don-Glo;

    C.  The decision by Yonkers and/or Don-Glo to continue to detain the vehicles after the initial reason for the seizure has lapsed;

    D.  The decision by Don-Glo to assert an *ex parte* possessory lien (as well as the amount of the lien); and

    E.  The eventual sale of the vehicle.

50.    Even if the initial seizures of the vehicles in question were made under a valid

exception to the Fourth Amendment's warrant requirement, a (possibly) valid initial warrantless seizure does not justify the subsequent actions taken by Yonkers or Don-Glo. Rather, Yonkers and Don-Glo must obtain a warrant, or new justification for a warrantless seizure, once the reasons for the (possibly valid) initial warrantless seizure have lapsed.

51.    As a consequence, the subsequent actions taken by Yonkers and Don-Glo render the seizures unreasonable in manner of execution, even if done pursuant to a warrant or an initially valid exception to the warrant requirement.

52.    It is also the regular policy and custom of Yonkers and Don-Glo, in the course of the above-described conduct, not to provide any form of constitutionally adequate notice, or any hearing whatsoever, in relation to any of the following actions:

A. The initial seizure of the vehicle;

B. The turnover of possession of the vehicle to Don-Glo;

C. The decision by Yonkers and/or Don-Glo to continue to detain the vehicles after the initial reason for the seizure has lapsed;

D. The decision by Don-Glo to assert an *ex parte* lien (as well as the amount of the lien); and

E. The eventual sale of the vehicle.

53.    Any notification(s) transmitted by Yonkers and/or Don-Glo relating to the conduct referenced above do not satisfy due process because these communications are merely notifications of Yonkers' and/or Don-Glo's unilateral demands. As such, they do not constitute constitutionally required notice or an opportunity to be heard (which does not occur).

54.    These actions, all taken in accordance with Yonkers' and Don-Glo's regular policies and customs for seizing and disposing of seized vehicles, violate the Fourth, Fifth

and Fourteenth Amendment to the United States Constitution.

55.     At the time of the seizure of Plaintiff's Vehicle, Yonkers and Don-Glo knew or should have known that their actions would violate the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

## COUNT I

### VIOLATION OF CIVIL RIGHTS
### PURSUANT TO TITLE 42 U.S.C. § 1983
### (Deprivation of Property by Unreasonable Seizure)

56.     Plaintiff realleges and incorporates by reference the allegations set forth in each of the foregoing paragraphs as if fully set forth at length herein.

57.     Plaintiff is the holder of protectible property interests in the Vehicle.

58.     Defendants meaningfully interfered with plaintiff's protectible interests in the Vehicle by towing it, detaining it, withholding possession from plaintiff, demanding payment and other conditions for its release, and threatening to ultimately take ownership and dispose of the Vehicle.

59.     By these actions, defendants acted under color of law to seize the Vehicle within the meaning of the Fourth Amendment to the United States Constitution.

60.     Defendants' seizure of the Vehicle was effected without a warrant.

61.     Defendants' seizure of the Vehicle was effected without the existence of any legitimate exception to the warrant requirement.

62.     To the extent the initial seizure was effected pursuant to an arguably legitimate exception to the warrant requirement, it was carried out in an unreasonable manner of execution insofar as the seizure exceeded the scope necessary to complete any legitimate task associated with

11

the purported warrant exception for which the vehicle was seized.

63.    Defendants' seizure of the Vehicle was therefore unreasonable in violation of the Fourth Amendment to the United States Constitution.

64.    The official decisions attributable to Don-Glo are made by Defendant Foley, who sets Don-Glo's standard policy and/or custom in relation to the handling and disposal of vehicles seized, towed and stored on behalf of and in concert with the City.

65.    As a direct and proximate result of Yonkers' and Don-Glo's violation of Plaintiff's constitutional right to be free from unreasonable seizures, Plaintiff has suffered damages based upon the lost value of the Vehicle, interference with her contractual rights in the Vehicle, and other damages.

66.    Accordingly, Plaintiff is entitled to relief under 42 U.S.C. § 1983.

## COUNT II

### VIOLATION OF CIVIL RIGHTS
### PURSUANT TO 42 U.S.C. § 1983
### (Deprivation of Property Without Due Process of Law)

67.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the foregoing paragraphs as if fully set forth at length herein.

68.    Plaintiff's protectible property interests in the Vehicle included, but were not limited to, Plaintiff's right to use and possession of the vehicle.

69.    Yonkers' and/or Don-Glo's actions resulted in the deprivation of Plaintiff's possessory rights relating to the Vehicle.

70.    Neither Yonkers nor Don-Glo had any mechanism for, nor did either secure, review of any of Defendants' actions in relation to the Vehicle before a judge or other neutral

decisionmaker.

71.     Neither Yonkers nor Don-Glo provided Plaintiff with an opportunity to be heard in connection with any of Defendants' actions in relation to the Vehicle in any venue at any time.

72.     Because neither Yonkers nor Don-Glo provided any mechanism for, nor did either secure, review of any of Defendants' actions in relation to the Vehicle by a judge or other neutral decisionmaker, Plaintiff was deprived of constitutionally adequate notice of that non-existent hearing procedure.

73.     The manner in which Plaintiff became aware of Yonkers' and Don-Glo's seizure of the Vehicle, as well as Don-Glo's continued possession of the Vehicle, did not constitute adequate notice for the purposes of due process.

74.     Defendants' deprivation of Plaintiff's rights in the Vehicle was therefore accomplished without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

75.     Defendants' deprivation of Plaintiff's rights in the Vehicle was accomplished in accordance with the Defendants' standard policies and/or customs for the handling and/or disposal of seized vehicles.

76.     As a direct and proximate result of Yonkers' and Don-Glo's violation of Plaintiff's constitutional right to be free from deprivations without due process of law, Plaintiff has suffered damages based upon the lost value of the Vehicle, interference with her possessory rights in the Vehicle, and other damages.

77.     Accordingly, Plaintiff is entitled to relief under 42 U.S.C. § 1983.

## COUNT III

### VIOLATION OF CIVIL RIGHTS
### PURSUANT TO 42 U.S.C. § 1983
(Taking Property Without Just Compensation)
(against Yonkers)

78.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the foregoing paragraphs as if fully set forth at length herein.

79.    Yonkers compensated Don-Glo, in whole or in part, by turning over possession of the Vehicle to Don-Glo, who possessed the Vehicle lawfully only by virtue of having obtained it from Yonkers.

80.    Don-Glo accepted the Vehicle as compensation, in whole or in part, for the services it provided to Yonkers, namely the towing and storage of the Vehicle that Yonkers had seized.

81.    Yonkers interfered with Plaintiff's possessory rights by turning over the Vehicle to Don-Glo and permitting Don-Glo to assert a possessory lien that prevented Plaintiff from exercising her possessory rights in the Vehicle.

82.    Yonkers did not compensate Plaintiff for the taking of her property interests in the Vehicle.

83.    As such, by using Plaintiff's Vehicle to compensate Don-Glo for the services it provides to Yonkers, Yonkers took Plaintiff's property for public use without just compensation in violation of the takings clause of the Fifth Amendment to the United States Constitution.

84.    The taking of Plaintiff's rights in the Vehicle by Yonkers was accomplished in accordance with Yonkers' standard policy and/or custom for the handling and/or disposal of seized vehicles.

14

85.    As a direct and proximate result of Yonkers' violation of Plaintiff's constitutional right to be free from takings without just compensation, Plaintiff has suffered damages based upon the lost value of the Vehicle, interference with her contractual rights in the Vehicle, and other damages.

86.    Accordingly, Plaintiff is entitled to relief under 42 U.S.C. § 1983.

## COUNT IV

### VIOLATION OF THE
### NEW YORK STATE CONSTITUTION

87.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the foregoing paragraphs as if fully set forth at length herein.

88.    Yonkers' and Don-Glo's actions also violate the corresponding protection of the New York State Constitution as set forth above.

## COUNT V

### DECLARATORY JUDGMENT
### PURSUANT TO 28 U.S.C. 2201

89.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the foregoing paragraphs as if fully set forth at length herein.

90.    An actual controversy has arisen and now exists between Plaintiff and Defendants warranting declaratory relief pursuant to 28 U.S.C. 2201.

91.    Plaintiff contends Defendants' conduct is unconstitutional.

92.    Defendants assert that their conduct is constitutional.

93.    Don-Glo has also imposed a possessory lien on the Vehicle.

94.    The parties will not resolve their disagreements over their respective rights in seized vehicles without a judicial declaration.

95.     A judicial declaration will also serve the public interest, insofar as Yonkers seizes hundreds of cars every year under the same or similar circumstances as set forth herein and which it subjects to the same policies and customs that Plaintiff contends violate the United States and New York Constitutions.

96.     Plaintiff seeks a declaration that, to the extent Defendants seek to rely on any provisions of state or local law to justify the above-described actions, said law(s) is/are unconstitutional as applied in violation of the supremacy clause and the aforementioned constitutional rights.

## COUNT VI

### CONVERSION
**(Against Don-Glo and Foley)**

97.     Plaintiff realleges and incorporates by reference the allegations set forth in each of the foregoing paragraphs as if fully set forth at length herein.

98.     Plaintiff has a possessory interest in the Vehicle, and in accordance with her rights, was entitled to immediate possession of the Vehicle.

99.     Don-Glo refused to surrender possession of the Vehicle to Plaintiff until all allegedly owed monies were paid in full.

100.    By these actions, Don-Glo purposefully, knowingly and/or intentionally exercised dominion and control over the Vehicle, wrongfully interfering with Plaintiff's right to possession of the Vehicle.

101.    Upon information and belief, Foley is the CEO of Don-Glo, and is therefore responsible for setting and enforcing Don-Glo's policies, practices and customs regarding the handling of Vehicles it tows and impounds on behalf of Yonkers. As such, Foley is personally liable to Plaintiff for the conversion of her property.

16

102.    Plaintiff has suffered, and continues to suffer, damages as a result of Don-Glo's actions.

## COUNT VII

### TORTIOUS INTERFERENCE
### (Against Don-Glo and Foley)

103.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the foregoing paragraphs as if fully set forth at length herein.

104.    Don-Glo's wrongful actions, as set by Foley, and as set forth above, constitute a knowing and intentional tortious interference with Plaintiff's prospective economic advantage with respect to the Vehicle.

105.    Plaintiff has suffered, and continues to suffer, damages as a result of Don-Glo's and Foley's actions.

### Prayers for Relief

WHEREFORE, Plaintiff requests that this Court:

A.    Grant judgment in favor of Plaintiff and against Defendants on all causes of action asserted herein;

B.    Declare that Defendants violated Plaintiff's rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution;

C.    Declare unconstitutional, in violation of the Fourth, Fifth and/or Fourteenth Amendments to the United States Constitution, Yonkers' policy and/or custom of effectuating the governmental purpose of clearing vehicles from the roadway by compensating impound contractors with the property of others-namely, other persons' motor vehicles and, if appropriate, permanently enjoin such practices;

D.    Declare unconstitutional, in violation of the Fifth and Fourteenth Amendments, Yonkers' policy and/or custom of placing another person's vehicle into the possession of third party impound contractors, with no preexisting interest in those vehicles, without just compensation and without providing notice or an opportunity to be heard before a neutral decision maker regarding the

17

propriety of Yonkers' actions in disposing of those vehicles and permanently enjoin such practices;

E.  Permanently enjoin Don-Glo from retaining possession of vehicles it obtains as a result of its relationship with government entities, including Yonkers, without providing notice and a hearing whereat persons with protected interests may challenge the government entity's and/or Don-Glo's actions and permanently enjoin restriction on lienholder rights to recover vehicles upon compliance with unilateral demands;

F.  Award Plaintiff compensatory damages, consequential damages, and nominal damages against all Defendants, jointly and severally;

G.  Award Plaintiff the costs of prosecuting this action together with attorneys' fees pursuant to 42 U.S.C. §1988;

H.  Award compensatory damages, consequential damages, punitive damages, statutory treble damages, costs, and attorneys' fees against Don-Glo, and in favor of Plaintiff;

I.  Declare any reliance by Defendants on local law inconsistent with the within-described constitutional rights, and, therefore, declare that any such state or local law, to the extent determined applicable, to be unconstitutional as applied; and

J.  Award such other and different relief as the Court, in the exercise of its discretion, deems just and proper.

Dated:  Merrick, New York
        July 16, 2025

Respectfully submitted,

**CAMPANELLI & ASSOCIATES, P.C.**

/s/ Andrew J. Campanelli
By:  Andrew J. Campanelli
     *Attorneys for Plaintiff*
     1757 Merrick Avenue, Suite 204
     Merrick, New York 11566
     (516) 746-1600
     ajc@campanellipc.com

18